124 N.J. Super. 251 (1973)
306 A.2d 79
JACOB VAN EEUWEN, ET AL., PLAINTIFFS-RESPONDENTS,
v.
HEIDELBERG EASTERN, INC., ET AL., DEFENDANT-RESPONDENT, AND HEIDELBERGER DRUCKMASCHINEN AKTIENGESELLSCHAFT, DEFENDANT-APPELLANT. JOSEPH E. CERTISIMO, ET AL., PLAINTIFFS-RESPONDENTS,
v.
HEIDELBERG CO., ET AL., DEFENDANTS-THIRD PARTY PLAINTIFFS,
v.
HEIDELBERGER DRUCKMASCHINEN AKTIENGESELLSCHAFT, THIRD PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1973.
Decided June 11, 1973.
*252 Before Judges KOLOVSKY, MATTHEWS and CRAHAY.
Mr. Peter E. Henry argued the cause for HDAG (Messrs. Crummy, O'Neill, Del Deo & Dolan, attorneys).
Mr. Francis P. Witham argued the cause for Heidelberg Eastern, Inc. in the Van Eeuwen action (Messrs. Markey, Witham and Amabile, attorneys; Mr. John P. Markey, on the brief).
*253 Mr. John J. O'Donnell argued the cause for Heidelberg Eastern, Inc. in the Certisimo action (Messrs. O'Donnell, Leary & D'Ambrosio, attorneys).
Messrs. Vaccaro & Osborne filed a brief on behalf of plaintiff Van Eeuwen (Mr. Patrick P. Randazzo, of counsel).
The opinion of the court was delivered by KOLOVSKY, P.J.A.D.
In each of the above matters plaintiff sued to recover damages for injuries received while operating, on behalf of his employer, a printing press manufactured by defendant Heidelberger Druckmaschinen Aktiengesellschaft (HDAG), a German corporation. Each plaintiff alleged that his injuries were caused by defects in the printing presses which had been purchased by the respective employers of plaintiffs from Heidelberg Eastern, Inc., a Delaware corporation.
HDAG appeals, on leave granted, from orders denying its motion to quash the service of process made upon it in each case pursuant to the "long arm" service provision set forth in so much of R. 4:4-4 (c)(1) as reads as follows:
If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made upon any of the foregoing and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.
The sole issue involved in the two consolidated appeals is whether the trial courts erred in rejecting HDAG's contention that "it is beyond the reach of jurisdictional due process with respect to an action in the courts of the State of New Jersey."
The only proofs before the trial courts on HDAG's motions appeared in the affidavit of Dr. Keese, its secretary. (For some unexplained reason, HDAG did not serve a copy of *254 its motion in the Van Eeuwen action on its codefendant, Heidelberg Eastern, Inc. The codefendant did not appear. Although HDAG's notice of motion in Certisimo was served on Heidelberg Eastern, Inc., the latter did not file an answering affidavit in the trial court. However, when the matters came before this court on HDAG's applications for leave to appeal and for consolidation of the appeals, a consent order was entered granting, among other things, permission to Heidelberg Eastern, Inc. to file an affidavit with respect to the issue of jurisdiction, and to HDAG to file an answering affidavit. Those affidavits have been filed and, pursuant to the stipulation of the parties, will be considered by us.)
Dr. Keese's original affidavit set forth that HDAG is a German corporation which manufactures and sells its printing presses in Germany to companies doing business in a number of countries, including the United States. The affidavit continued:
Title to said printing presses is transferred to the other companies and payment is made to [HDAG] outside the United States of America. All manufacturing and selling activities of [HDAG] are carried on outside of the United States.
Title to the printing presses and parts which are to be sold in the United States passes in Germany to Heidelberg Eastern, Inc., a New York corporation which is an importer of Heidelberg Printing Presses and parts in the United States. Heidelberg Eastern, Inc. transacts all business on its own behalf and is not an agent of [HDAG]. [HDAG] does not own any of the shares of stock of Heidelberg Eastern, Inc.
Further, according to Dr. Keese, HDAG has no personnel in the United States; it "does no business in New Jersey"; it has no office, place of business, property, bank account or telephone listing there; it does not ship its products into New Jersey; it does not advertise or solicit business or pay taxes in that State or anywhere in the United States. Finally, the affidavit stated:
*255 Although [HDAG] products are sold to purchasers in the State of New Jersey, such sales are made by distributors such as Heidelberg Eastern, Inc. on their own behalf and for their own benefit and not on behalf of [HDAG]. [HDAG] does not sell Heidelberg Automatic Printing Presses to customers in the State of New Jersey. [HDAG] owns no financial interest in any New Jersey distributor of Heidelberg Printing Presses.
[HDAG] does not supervise, control or otherwise oversee the business operations of distributors of Heidelberg Printing Presses in the United States.
Both trial courts concluded that despite the facts set forth in Dr. Keese's affidavit, still the New Jersey courts could and should assert "long arm jurisdiction" over HDAG. In Van Eeuwen Judge Breslin held that where it is alleged that an article has been defectively manufactured or constructed, the manufacturer is subject to jurisdiction under our "long arm statute," irrespective of where in the world the manufacturer is located, if it put the
article in international commerce with the idea and with the purpose of selling that article throughout * * * the world including * * * the United States.
In Certisimo, which is reported at 122 N.J. Super. 1, Judge Byrne, after reviewing the authorities, gave an affirmative answer to what he said was "the narrow question to be determined," viz:
Does the sale and delivery of a product in a foreign nation by a foreign manufacturer to an American distributor with the obvious expectation that it will be sold in some state of the United States subject the foreign manufacturer to the personal jurisdiction of New Jersey's courts when the product causes injury to a New Jersey resident in New Jersey? More simply, is a finding of jurisdiction in such a situation "consistent with due process of law"? (122 N.J. Super. at 5)
Both trial judges recognized that they might be breaking new ground in their rulings  as indeed they were. However, in view of the additional proofs submitted to us, we find it unnecessary to venture into an uncharted area to *256 resolve whether the "stream of commerce" rule adopted by the trial courts conforms to the requirements of due process, since we need go no further than the cases which have already been decided  many of which are cited in Judge Byrne's opinion  to determine that the additional proofs show that it was proper to deny HDAG's motion to quash service of process.
We conclude from our review of the additional proofs that the contacts between HDAG and this State arising out of the relationship between HDAG and Heidelberg Eastern, Inc., which sold and delivered the printing presses in this State, were such that "the maintenance of the suit[s] [in New Jersey] does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
This is not a case in which the machine was introduced in New Jersey by a distributor or wholesaler who had made one or more casual purchases of the machine in a foreign country for resale in the United States. If it were, then indeed we would be called upon to decide whether it offends "traditional notions of fair play and substantial justice" to subject such a foreign manufacturer to the jurisdiction of this State merely because the casual purchaser from the manufacturer sells and delivers the machine in this State.
Here, however, Heidelberg Eastern, Inc. was not a casual purchaser from the manufacturer HDAG. Its relationship with HDAG was much more than that. It was one created by HDAG to actively promote and insure the sale of its presses in the United States.
To that end HDAG granted exclusive distributorship rights in designated portions of the United States to two corporations, Heidelberg Eastern, Inc. and Heidelberg Pacific, Inc. Heidelberg Eastern's exclusive territory embraced 36 states, one-half of Texas and the District of Columbia. During the years 1966 and 1970 approximately 90%, and during the year 1971 approximately 80%, of *257 Heidelberg Eastern's business consisted of selling and servicing HDAG's printing presses. Advertising and promotional publications prepared by HDAG directed to the ultimate users are supplied by it to Heidelberg Eastern so that it may distribute them to prospective customers and users of the presses. Heidelberg Eastern's sales of such presses and parts in New Jersey during the four years 1968 through 1971 totalled $3,300,000 and the price paid by Heidelberg Eastern to HDAG for those items in that period totalled approximately $1,500,000.
On that background we find of little significance HDAG's reference in its answering affidavit to the small percentage of its world-wide sales reflected in the sales made by Heidelberg Eastern, Inc. to New Jersey customers, or in its affidavit statement that
HEI [Heidelberg Eastern, Inc.] is a totally independent company from HDAG. It is a customer of HDAG. HDAG, however, has no influence whatsoever over the business affairs of HEI. The organization, sales effort, and after-sales service of HEI are matters wholly within HEI's knowledge and discretion. HDAG deals with HEI merely as one of its customers and makes sales of its presses and parts to HEI in Germany. At the time of such sale, however, HDAG has no knowledge concerning the destination of a given machine beyond the Port of New York. HDAG ships its presses to HEI in New York without any knowledge of whether HEI has some other customer for resale of the press or, if so, who that customer may be or where he is located.
That HDAG has elected to market its products in the United States through the grant of exclusive distributorships in specified areas to independent contractors rather than through its own sales organization is of little moment in considering whether it is fair and just that HDAG be subject to the jurisdiction of the court of a state in which the exclusive distributor has sold and delivered one of HDAG's presses. Pragmatically, the exclusive distributor, albeit that it is an independent contractor, is an "integral spoke in a wheel in which [HDAG] is the hub," Hoagland v. Springer, 75 N.J. Super. 560, 564 (App. Div. 1962), aff'd o.b. 39 *258 N.J. 32 (1962), a wheel created by HDAG to insure the distribution and sale of its printing presses in New Jersey as well as in the other states included in Heidelberg Eastern's exclusive territory.
In those circumstances it is neither unfair nor unjust to subject HDAG to a suit in this State by a New Jersey resident who, while operating one of HDAG's presses in this State, was injured by reason of an alleged defect in the press. See Roche v. Floral Rental Corp., 95 N.J. Super. 555 (App. Div. 1967), aff'd o.b. 51 N.J. 26 (1968).
The orders appealed from are affirmed.