**Ann RUTHERFORD, Plaintiff,**

v.

**SHERBURNE
CORPORATION, Defendant.**

**Civ. A. No. 85–0912.**

United States District Court,
D. New Jersey.

Sept. 4, 1985.

Selikoff & Cohen, P.A. by Robert Eyre, Cherry Hill, N.J., for plaintiff.

Clapp & Eisenberg, P.C. by Freda L. Wolfson, Newark, N.J., for defendant.

## OPINION

COHEN, Senior Judge:

This personal injury action is before the Court on a motion to dismiss for lack of personal jurisdiction made, pursuant to Fed.R.Civ.P. 12(b)(2), on behalf of the defendant Sherburne Corporation (Sherburne). Alternatively, Sherburne seeks to have this case transferred to the District of Vermont pursuant to 28 U.S.C. § 1404(a). See Schwilm v. Holbrook, 661 F.2d 12, 15 (3d Cir.1981) (transferor court need not have jurisdiction over the defendant in order to grant a § 1404(a) motion). Although the plaintiff opposes both of these motions, she asserts that transfer of venue would be appropriate as opposed to the outright dismissal of her complaint. Plaintiff's Brief at 1464.

For the reasons provided below, we shall deny defendant's first motion to dismiss, holding that it is amenable to suit in New Jersey, and grant its alternative motion, transferring this case to the District Court in Vermont.

## FACTUAL BACKGROUND

Although they have been characterized in diametrically opposing manners by the parties herein, the facts of this case are not in dispute. Plaintiff, a citizen and resident of New Jersey, was injured on February 26, 1983, while skiing at the Killington Ski Area (Killington) in Killington, Vermont. Apparently, she fell and seriously injured herself when her skis caught hold of the chair lift from which she was disembarking. Emergency surgery was performed on her leg and hip and she remained hospitalized in Rutland, Vermont, until March 4, 1983.

Defendant Sherburne[1] owns and operates Killington. It is a Vermont corporation which presently does not have assets, employees or agents in New Jersey. Thus, its assistant treasurer characterizes it as "a local Vermont business with no significant contact with the State of New Jersey." Affidavit of R. Fenner, ¶ 3.

Ms. Rutherford portrays the defendant and its contacts quite differently. Her trip to Killington was organized by a ski club and a ski shop located in Cherry Hill, New Jersey. Since 1968, she has taken approximately thirty such trips to the ski area. On the trip in question and apparently on those previous thereto, travel and lodging arrangements were coordinated, for a fee, by the ski club. Similarly, plaintiff purchased her weekend lift ticket from Sherburne at a discount rate extended to her New Jersey group.

Of primary importance to our jurisdictional determination is the question of whether Sherburne has purposefully directed its activities at residents of New Jersey. We must inquire, therefore, into its attempts to attract Garden State skiers.

During the ski season in which plaintiff was injured, Sherburne employed at least one representative, David Alonso, who visited ski shops and clubs in New Jersey to distribute information about Killington. Sherburne routinely purchases advertising space in at least four New Jersey newspapers: the Newark Star Ledger, the Bergen Evening Record, the Asbury Park Press and the Suburban New Jersey News. Additionally, advertisements about Killington appear in at least two national magazines, Ski Magazine and Skiing Magazine, which are distributed in New Jersey. Finally, approximately 13,000 of Sherburne's skiing brochures about Killington were distribut-

---

1. Subsequent to the filing of this suit, Sherburne changed its name to Killington Ltd. Both parties have, for the sake of simplicity, continued to refer to it as Sherburne. Generally, courts ratify any such aspect of detente and we shall do likewise. Hereinafter, references to Sherburne are to the defendant itself, while its ski area will continue to be denoted as Killington.

ed in New Jersey during the 1982–83 season[2].

Sherburne's solicitations have not been unrequited. Although it does not record the number of its patrons who hale from nearby states, like New Jersey, it does record what it refers to as "car and bus counts," *i.e.*, the number of buses and cars to visit Killington grouped by the states in which the vehicles are registered. It also estimates the total number of its patrons in each ski season. Thus, in the 1982–83 season, when plaintiff was injured, approximately 695,000 people visited Killington. In the next two seasons, this number rose to 784,800 and then to 820,600. Using these figures in conjunction with defendant's car and bus counts, plaintiff estimates that over 100,000 New Jerseyans visit Killington annually and account for more business than the residents of any state other than New York and Massachusetts both of which share common borders with Vermont[3]. Thus, plaintiff's calculations reveal that New Jersey residents consistently generate more business for Killington than residents from Vermont itself.

## DISCUSSION

Fed.R.Civ.P. 4(e) provides that service on a nonresident defendant may be effected pursuant to the forum's relevant statute or rule. New Jersey's "long arm" provision, Civil Practice Rule 4:4–4(c)(1), directs the Court back to the body of federal law enunciated in *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, by providing

that process may be served in accordance with "the uttermost limits permitted by the United States Constitution." *Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207 (1971). The ultimate question presented by this motion, therefore, is whether the exercise of this Court's jurisdiction over the defendant would be consistent with the due process of law.

We are the beneficiaries, in this regard, of a recent review of the due process personal jurisdiction inquiry by the Supreme Court. In *Burger King v. Rudzewicz*, —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) *reversing Burger King v. Macshara*, 724 F.2d 1505 (11th Cir.1984), the Court held that a Florida court could permissibly exercise jurisdiction over a Michigan resident who had allegedly breached a franchise agreement with a Florida corporation by failing to make required payments in Florida. Justice Brennan, writing for a six member Court majority[4], emphasized the need for a "highly realistic" approach. *Id.* —— U.S. at ——, 105 S.Ct. at 2185. He noted that the Court had long ago rejected the notion that personal jurisdiction "might turn on 'mechanical' ... or on 'conceptualistic ... theories of the place of contracting or of performance.'" *Id.* (citations omitted). Similarly, in this case, we are not only concerned with the sometimes illusive place of injury, *see, e.g., Schwilm v. Holbrook*, 661 F.2d 12, 15 (3d Cir.1981), but, instead, with the defendant's conduct toward New Jersey residents in general and its effect on the plaintiff in particular.

---

**2.** Sherburne no longer maintains records of the number of brochures that it distributes in New Jersey.

**3.** Defendant objects to plaintiff's extrapolations primarily by asserting that the car and bus counts do not specify the number of passengers in each vehicle or the residence of each passenger. Sherburne maintains, for example, that a Delaware resident may take a train to New Jersey and then a bus from that state to Vermont in order to ski with out-of-state friends. While this is a plausible scenario, we find the hypotheses underlying plaintiff's estimates to be considerably more likely. We simply believe

that the state in which a motor vehicle is registered provides a reliable indication of the residence of its inhabitants. *Compare* Ehrenzweig, *Comments on Babcock v. Jackson, A Recent Development in Conflict of Laws,* 63 Colum.L.Rev. 1212, 1245–46 (1963) (suggesting that choice of law inquiry in automobile guest statute cases should depend upon place where car is registered).

**4.** Justice Stevens wrote a dissenting opinion in which Justice White joined. Justice Powell did not participate in the decision.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King*, —— U.S. at ——, 105 S.Ct. at 2181. The Clause preserves "traditional notions of fair play and substantial justice," *see International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, by providing defendants "with some minimum assurance as to where [their] conduct will and will not render them liable to suit." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Thus, a court cannot exert jurisdiction over a defendant unless his "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* In short, the Due Process Clause requires that a defendant have "fair warning" of his amenability to the jurisdiction of a foreign sovereign. *Burger King*, —— U.S. at ——, 105 S.Ct. at 2182.

■ A potential defendant may be said to have been fairly warned in two situations. First, a court may permissibly exercise what has been referred to as its "general jurisdiction" over any defendant who has "maintained continuous and substantial forum affiliations" even if the plaintiff's claim does not arise out of or is unrelated to those forum affiliations. *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211–12 (3d Cir.1984) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984)). Second, a court's specific jurisdiction may be invoked "when [plaintiff's] claim is related to or arises out of the defendant's contacts with the forum." *Id.* Only in the latter instance is minimum contacts analysis appropriate. *Dollar Sav. Bank*, 746 F.2d at 212.

"Case law reveals an occasional failure to distinguish between the requirements for specific, as contrasted with general jurisdiction." *Id.* It is uncertain, however, whether this failure is occasionally unavoidable. In many cases, the specific-general distinction seems clear. For example, in *Keeton v. Hustler Magazine*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), the plaintiff's alleged defamation injury was purportedly caused by photographs and comments that appeared in the very magazines which constituted the defendant's contacts with the forum. Similarly, in *World-Wide Volkswagen*, the plaintiff's personal injuries were related to an allegedly unsafe vehicle which itself constituted the nonresident defendant's forum contacts. 444 U.S. at 289, 100 S.Ct. at 563. Thus, minimum contacts analysis was appropriate in both cases. Again, in *Burger King*, —— U.S. at ——, 105 S.Ct. at 2182, a "specific jurisdiction" inquiry was appropriate because the claim, for breach of contract, obviously, arose out of the defendant's contacts (contract negotiations) with the forum.

The circumstances under which a general jurisdiction inquiry is required seem less clear. For example, in *Helicopteros*, the parties conceded that the plaintiff's wrongful death claim was unrelated to and did not arise out of the defendant's forum activities (contract negotiations). 104 S.Ct. at 1872–73. Nevertheless, in dissent, Justice Brennan stated unequivocally that although the cause of action did not "formally 'arise out of'" the defendant's forum contacts, it was *"significantly* related" thereto. *Id.* at 1878 (emphasis supplied). In response, Justice Blackman, writing for all of the Court's other members, suggested that the majority had merely relied on the plaintiff's concessions regarding the question of whether her claim was related to the defendant's contacts. *Cf.* Fed.R. Civ.P. 12(h)(1) (personal jurisdiction requirement is a waivable right). In fact, the Court noted specifically that it had not decided

the questions (1) whether the terms "arising out of" and "related to," describe different connections between a

cause of action and a defendant's contact with a forum, and (2) what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection exists. Nor do we reach the question whether, if the two types of relationship differ, a forum's exercise of personal jurisdiction in a situation where the cause of action "relates to," but does not "arise out of," the defendant's contacts with the forum should be analyzed as an assertion of specific jurisdiction.

*Helicopteros,* 104 S.Ct. at 1873 n. 10.

The Court's disinclination to decide the above quoted issues stemmed from the fact that the above quoted issues had not been presented in the *Helicopteros* case. *Id.* This is not true in the case *sub judice.* In fact, the issue of whether the plaintiff's negligence claim arises out of or is related to defendant's advertisements has been put squarely before this Court by defense counsel's reliance on two prior decisions from within the Third Circuit.

In *Scheidt v. Young,* 389 F.2d 58 (3d Cir.1968) (per curiam), the Court of Appeals held that the advertisements of the defendant, a Pennsylvania lodge, in a New York newspaper that was circulated in New Jersey, did not constitute the necessary "minimum contacts." Thus, a trial court could not constitutionally exercise its jurisdiction over the defendant in the aftermath of a personal injury sustained by the plaintiff at the lodge. *Id.* at 60. The Court reasoned that the defendant had not purposefully availed itself of the privilege of conducting activities within the forum and, therefore, could not be subject to the forum's jurisdiction. The opinion, however, predated the "general-specific" jurisdictional inquiry. Thus, its use of minimum contacts analysis (suggesting a specific jurisdiction inquiry) cannot be deemed to be dispositive.

In *Collins v. Sherburne Corp.,* No. 81–287, (D.N.J. June 15, 1981) (oral opinion read into the record), the Honorable Dickinson R. Debevoise was presented with the same issues and the same defendant that are presently before the Court. In *Collins,* the plaintiff was another New Jersey resident injured at the Killington ski area. Judge Debevoise found that the plaintiff's cause of action was "not related to the contacts which defendant has maintained with the State of New Jersey." *Id.* at 5. Giving no indication that he had been provided with the benefits of diligent discovery efforts, like those of the plaintiff herein, Judge Debevoise further found that the defendant's "solicitation of New Jersey business [was] not qualitatively different from that in *Scheidt v. Young.*" *Id.* at 10. Accordingly, he granted defendant's motion to dismiss for lack of personal jurisdiction[5]. Respectfully, this Court must disagree with our learned brother.

■ Unless we deprive these terms of their ordinary meaning[6], it seems clear that a claim may be "related" to a defendant's contact with a forum while not "arising out of" the same. The only type of claim that could arise out of an advertisement, for example, would be one in defamation or perhaps for an invasion of privacy. *See, e.g., New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Certainly, plaintiff's personal injury did not "arise out of" defendant's advertisements. Yet, if the plaintiff traveled to Killington to ski in response

---

5. Judge Debevoise did, however, permit a transfer of venue in order to avoid leaving the plaintiff without any forum for litigation. *Id.* at 11.

6. We see no reason to give these terms anything but their ordinary meaning. There are no policy justifications that counsel in favor of either a restrictive or a liberal construction. *Cf. E.J. Korvette Co. v. Parker Pen Co.,* 17 F.R.D. 267 (S.D.N.Y.1955) (construing "arises out of" language in Fed.R.Civ.P. 13(a)). In fact, most decisions interpreting Rule 13(a) or (g) attach special significance to the words "transaction or occurrence" rather than to the "arising out of" language in order to give effect to the policy of avoiding duplicative litigation. *See, e.g. Banco Nacional de Cuba v. Chase Manhattan Bank,* 658 F.2d 875 (2d Cir.1981).

to Sherburne's advertisement which appeared in her local newspaper and if she was injured while skiing, it is difficult to imagine how her injury would *not* be *related* to the defendant's solicitations (its forum contacts). Therefore, we find that the plaintiff's injuries were related to the defendant's forum activities. Accordingly, we shall next consider whether "the defendant has 'purposefully directed' [its] activities at residents of the forum." *Burger King*, —— U.S. at ——, 105 S.Ct. at 2182, and, if so, whether any other factors would render this Court's exercise of its personal jurisdiction over the defendant unreasonable nevertheless.

As to the defendant's forum contacts, we believe that this case is readily distinguishable from other "injured-tourist" cases, including *Scheidt v. Young,* in which courts have rejected the long-arm basis of personal jurisdiction. *See Harris v. VAO Intourist, Moscow,* 481 F.Supp. 1056, 1064–65 (E.D.N.Y.1979) (collecting cases). Preliminarily, we note, however, that the minimum contacts inquiry must depend on a weighing of the particular facts in a case. *Helicopteros,* 104 S.Ct. at 1873 (Brennan J., dissenting). Thus, we believe that it would be prudent to resist any "bright-line" pronouncements regarding personal jurisdiction over nonresident defendants in the so-called "injured-tourist" line of cases.

In *this* case, the defendant collects data which permits it to evaluate the "return" it is reaping from its forum solicitations. In *this* case, the defendant advertises in four forum newspapers, not just newspapers circulated in New Jersey. In *this* case, the defendant knows that a substantial number of its patrons, more than from any other noncontiguous state, hale from New Jersey. Notwithstanding the defendant's physical absence from New Jersey, it can-

not be doubted that its commercial efforts are purposefully and, in fact, successfully directed toward residents of New Jersey. It cannot, therefore, reasonably claim to be surprised or offended if its solicitation results in ski slope injuries to New Jersey residents and in litigation in New Jersey. Inasmuch as the defendant has fairly availed itself of the forum's residents, it "will not be unfair to subject [it] to the burdens of litigating" here. *Burger King,* —— U.S. at ——, 105 S.Ct. at 2183.

Finally, we must determine whether any other factors would render exercise of this Court's jurisdiction over the defendant unfair notwithstanding its forum contacts. *Id.* Although a plaintiff must make a prima facie showing of compliance with personal jurisdiction requirements, pursuant to Fed.R.Civ.P. 12(b)(2), a defendant who has purposefully directed his activities at forum residents, "must present a *compelling* case that the presence of [these] other considerations would render [our] jurisdiction unreasonable." *Id.* at ——, 105 S.Ct. at 2184 (emphasis supplied).

Generally, a court may evaluate the defendant's "minimum contacts" by focusing on "the relationship among the defendant, the forum and the litigation." *Keeton,* 104 S.Ct. at 1479. More specifically, we may consider in this case the following:

"the burden on the defendant," "the forum State's interest in adjudicating the dispute," ... "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Burger King,* —— U.S. at ——, 105 S.Ct. at 2184 (citing *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564).[7]

---

7. In the case at bar, these factors are considered in order to determine whether the defendant should not be amenable to the forum's jurisdiction notwithstanding a finding that it has established minimum contacts in New Jersey. Conversely, in other cases, these factors may "serve

to establish the reasonableness of jurisdiction upon a *lesser* showing of minimum contacts than would otherwise be required." *Id.* —— U.S. at ——, 105 S.Ct. at 2184.

In this latter type of case, a court would consider "the plaintiff's interest in obtaining

The defendant has been unable to demonstrate any unique or compelling burden that would befall it if it were required to litigate this suit in New Jersey. No legal considerations have been presented in this regard and the defendant's brochures emphasize the ease with which one may traverse the states which separate New Jersey from Vermont. Moreover, "a defendant claiming [mere] *inconvenience* may seek a change in venue." *Id.* —— U.S. at ——, 105 S.Ct. at 2185 (emphasis supplied). It seems clear that the plaintiff did not purposefully choose a forum that would place the defendant at a "severe disadvantage" in an attempt to gain tactical advantage. *Id. See also Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972). The plaintiff merely filed suit in the federal court located wherein she resides.

The interests of the forum in adjudicating this dispute, as well as those of the interstate judicial system, do not engender any particular concerns and certainly do not constitute a compelling case contrary to the exercise of this court's jurisdiction over the defendant. Each of the litigants could articulate concerns regarding local prejudice but neither can do so with specificity or great conviction. Similarly, the development of substantive social policies is not at issue and considerations of judicial efficiency would only suggest that this Court and present counsel complete their assigned tasks.

For all of the foregoing reasons, we hold that the exercise of New Jersey's jurisdiction over the defendant would not offend the Due Process Clause. Accordingly, defendant's motion to dismiss shall be denied with prejudice.

## DEFENDANT'S ALTERNATIVE MOTION TO TRANSFER VENUE

The Due Process Clause protects a defendant from being required to litigate in a distant forum with which it has no substantial connection so as to preserve traditional notions of fair play and substantial justice. Because its emphasis is on the relationship between the defendant and a chosen forum, the protections afforded by the Due Process Clause "against inconvenient litigation [are] typically described in terms of 'reasonableness' or 'fairness.'" *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. In addition, the Due Process Clause ensures that the "States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.*

The operation and protections of the venue transfer statute, 28 U.S.C. § 1404, while related to those of the Due Process Clause, are distinguishable in several respects. Obviously, owing to their constitutional origin, due process protections, while waivable, operate without regard to jurisdictional statutes enacted by Congress. On a more practical level, the due process inquiry emphasizes the extent to which a defendant has created a relationship with a particular forum while § 1404 emphasizes the logistical relationships which exist between both (or all) parties, as well as nonparty witnesses, and competing fora. Accordingly, the Due Process Clause looks to the past and usually to the attempts made by a defendant to do business in a particular area while the § 1404 inquiry looks to the future and seeks to determine where the parties will best be able to present their cases. More specifically, the Due Process Clause ensures that one will not be brought to trial in a particular state, even if his actions

convenient and effective relief." *Id.* at ——, 105 S.Ct. at 2184. In this case, plaintiff's interest has been expressed in her forum selection. In fact, her very ability to select this forum instead of the Vermont situs largely completes this aspect of our due process inquiry. *See Shaffer v. Heitner*, 433 U.S. 186, 211 n. 37, 97 S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683 (1977). *See also Van*

*Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964) (where change of venue is made upon motion of defendant transferee court must apply the law that would have been applied by the transferor court). Again, considerations of simple convenience are addressed below regarding defendant's request to transfer venue.

have caused some effect there, unless he has had minimal notice or "fair warning" of this possibility. *See Kulko v. California Superior Court,* 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978) (citing Restatement (Second) of Conflict of Laws § 37 (1971)). Section 1404, on the other hand, seeks to facilitate the optional presentation and evaluation of evidence once trial has begun. Thus, transfers are permitted for the convenience of the parties and in the interest of justice. *See, e.g., Weber v. Coney,* 642 F.2d 91, 93 (5th Cir. 1981).

In relevant part, Congress has provided that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

"This provision embodies in an expanded version the common law doctrine of forum non conveniens, under which a court in appropriate circumstances may decline to exercise its jurisdiction in the interest of the 'easy, expeditious and inexpensive,' resolution of a controversy in another forum." *Burger King,* —— U.S. at —— n. 20, 105 S.Ct. at 2185 n. 20. "This is not to say that the ... factors [relevant to the forum non conveniens inquiry] have changed or that the plaintiff's choice of forum is not to be considered, but only that the [court's] discretion to be exercised [in a § 1404 inquiry] is broader." *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). Generally, "[t]he moving party must show [that] the 'balancing of the interests weighs in favor of the transfer. Unless that balance weighs strongly in favor of the defendant, the plaintiffs' choice of forum should not be disturbed.'" *Busch v. Sea World of Ohio,* 95 F.R.D. 336, 340 (W.D.Pa.1982).

■ There is no question that this diversity action could have been filed in Ver-

mont. We find further that the defendant has met its burden and demonstrated that a transfer would serve the interests of justice and not merely shift inconvenience to the plaintiff. *See Van Dusen,* 376 U.S. at 646, 84 S.Ct. at 824. *See generally, Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Accordingly, we shall grant its motion to transfer.

Of primary importance to this decision is the fact that all of the most significant nonparty witnesses reside in Vermont. *See Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259 (S.D.N.Y.1974); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3851. Some of these people are not employees of the defendant and could not be subpoenaed in New Jersey. Included in this latter group are the nurse who rendered first aid to the victim after her accident and one of three persons who operated the ski lift at the time of the accident (who continues to reside in Vermont but is no longer employed by Sherburne). Also included in this Vermont group is the physician who performed emergency surgery on the plaintiff and who, atypically, continues to be plaintiff's treating physician [8].

At oral argument, plaintiff's counsel conceded that there were no fact witnesses or skiing companions from New Jersey who would testify regarding the circumstances of her fall from the ski lift. Conversely, in addition to the testimony of the lift operators, a view of the accident scene could be very helpful to a jury. Of course, it would be impracticable for a jury to view the scene unless this case is tried in Vermont. *See Garner v. Jaeger Machine Co.,* 331 F.Supp. 352, 353 (S.D.Ohio 1971).

The only truly significant factor, which militates against a trial in Vermont, is the plaintiff's health as it relates to her ability to travel and testify in her own behalf. In

---

**8.** In her affidavit, plaintiff describes her inability to find a competent physician in the Delaware Valley who was both able to see her promptly and willing to accept her Blue Cross-Blue Shield coverage.

her supplemental affidavit, plaintiff maintains that it is difficult for her to travel long distances because she is in constant pain. Additionally, plaintiff contends that the "stress associated with the litigation, including the prospect of the case being transferred to Vermont" might aggravate her neurological problems, which include some unspecified form of epileptic seizures. Plaintiff's Supplemental Affidavit. ¶ 7.

We are, of course, unable to alleviate all of the stress and anxiety associated with litigation. Moreover, plaintiff has been able to make at least eight trips to Vermont to visit her physician, Dr. Holmes, since the accident [9]. Her physical discomforts are similarly undermined by the admission, at oral argument, of her counsel that she continues to engage in cross country skiing.

While the defendant has specifically identified crucial witnesses who would not be subject to compulsory process emanating from this Court, the plaintiff has only generally alluded to "pain and suffering witnesses" who would have to be transported from New Jersey in the event of a Vermont trial. Presumably, these witnesses include an unnamed orthopedic physician, who treated the plaintiff briefly in New Jersey, and one Alba Welding, who is a nurse and a friend of the plaintiff reportedly familiar with her condition. We regret any inconvenience occasioned by our decision to the plaintiff and her witnesses. Nevertheless, it seems very clear that this case should be tried, in the interests of justice, in Vermont.

The Court shall enter an appropriate order.

---

**9.** It should be recalled that prior to the accident, plaintiff made over thirty trips to Killington to ski.