**Eileen WEBER, Plaintiff,**

**v.**

**JOLLY HOTELS, et al., Defendants.**

**Civil Action No. 96–2582.**

United States District Court,
D. New Jersey.

Sept. 12, 1997.

Lawrence Z. Farber, Breslin & Breslin, Hackensack, NJ, for Plaintiff.

John R. Altieri, Hackensack, NJ, and Rudolph V. Pino, Jr., Pino & Associates, White Plains, N.Y., for Defendants.

## *OPINION*

WOLIN, District Judge.

This case arises out of an accident plaintiff, Eileen Weber, had while a guest at one of defendant's, Itajolly Compagnia Italiana Dei Jolly Hotels, hotels in Italy. Defendant moves this Court to dismiss the action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Court will not grant the motion to dismiss despite concluding that it does not have jurisdiction over defendant. Instead, the Court will grant plaintiff's request to transfer the case to the Southern District of New York because the statute of limitations governing plaintiff's claim prevents the Court from dismissing the case without prejudice.

## BACKGROUND

Defendant is an Italian corporation and its principal place of business is in Valdagno, Italy. (Zanuso Cert. ¶ 2). Defendant owns and operates thirty-two hotels in Italy, and independent subsidiaries own and operate hotels in Holland, France, Belgium, and New York. (Def.'s Resp. to Pl.'s Interrog. No. 2). (Zanuso Cert. ¶ 2). Defendant does not conduct any business in New Jersey. (Zanuso Cert. ¶ 4). However, it does provide "photographs of hotel rooms, descriptions of hotel facilities, information about numbers of rooms and telephone numbers" on the Internet. (Pl.'s Br. in Opp. at 10).

In July 1993, defendant and Grand Circle Travel, a Massachusetts corporation, entered into an agreement whereby one of defendant's hotels, the Jolly Diodoro Hotel in Taormina, Sicily, Italy, would allot a certain number of rooms per week at the hotel for Grand Circle Travel during the 1994 calendar year. (Def.Ex. C). The agreement provided that defendant would bill Grand Circle Travel for the rooms that it booked. (Def.Ex. C). Defendant also promised not to accept any bookings for the Jolly Diodoro Hotel from five enumerated tour groups or any other company claiming to represent the American Association of Retired Persons ("AARP"). (Def.Ex. C).

Grand Circle Travel and plaintiff have a relationship that dates back to 1976 when plaintiff embarked on a travel tour arranged by Grand Circle Travel. (Pl.Aff.¶ 5). After the first trip, Grand Circle Travel sent plaintiff information and brochures about trips, tours, and travel attractions. (Pl.Aff.¶ 7). Through the years, plaintiff went on trips arranged by Grand Circle Travel. (Pl. Aff.¶ 8). In late 1993 or early 1994, Grand Circle Travel sent plaintiff a brochure that described a tour of Italy. (Pl.Aff.¶ 9). On February 25, 1994, plaintiff booked a trip to Italy through Grand Circle Travel. (Pl. Aff.¶ 10). Included in the trip was a stay at the Jolly Diodoro Hotel. (Pl.Aff.¶ 10).

On December 7, 1994, plaintiff sustained injuries when she fell at the Jolly Diodoro Hotel. (Pl.Aff.¶ 3). At the time of the accident, plaintiff was a guest of the hotel. Plaintiff is a citizen of New Jersey and a member of AARP. (Pl.Aff.¶ 6).

On June 26, 1995, plaintiff filed a Complaint and Jury Demand in the Superior Court of New Jersey, Law Division, Bergen County. She alleged that defendant knew or should have known of the dangerous condition on its premises. (Pl.Compl.¶ 4). The case was removed to the United States District Court for the District of New Jersey on diversity grounds.

Defendant now moves the Court to dismiss the case for lack of personal jurisdiction.

## DISCUSSION

### 1. Personal Jurisdiction: Standards

█ Rule 4(e) of the Federal Rules of Civil Procedure allows a district court to exercise personal jurisdiction over a non-resident defendant to the extent allowed by the long-arm statute of the state where the court sits. New Jersey's long-arm statute permits the exercise of personal jurisdiction over a non-resident defendant to the full extent permitted by the Due Process Clause of the Fourteenth Amendment of the Constitution. *See* N.J. Sup.Ct. R. 4:4–4(c)(1); *see also De-James v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Doumani v. Casino Control Comm'n,* 614 F.Supp. 1465, 1471 (D.N.J.1985).

█ The purpose of restricting personal jurisdiction is to protect the individual interests of non-resident defendants. *See United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). A court may exercise personal jurisdiction over a non-resident defendant only where "minimum contacts" exist such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). A defendant establishes minimum contacts with a forum state by committing some act by which he purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). These contacts must be of the nature such that the individual non-resident defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citing *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567). What constitutes minimum contacts varies with the "quality

and the nature of defendant's activity." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240.

A defendant can be subject to either specific or general personal jurisdiction in a forum state. To assert "general" jurisdiction, a plaintiff must establish that defendant's contacts with the forum state are so "continuous and substantial" with the forum state that the defendant should expect to be haled into court on any cause of action. *Helicopteros Nacionales de Colombia. S.A. v. Hall,* 466 U.S. 408, 414–16 & 414 n. 9, 104 S.Ct. 1868, 1872–73 & 1872 n. 9, 80 L.Ed.2d 404 (1984); *Provident Nat'l Bank v. California Fed. Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987).

To establish specific jurisdiction, a defendant must have purposefully directed his activities at residents of the forum, sufficient to establish minimum contacts under *International Shoe. See Henry Heide, Inc. v. WRH Prods. Co.,* 766 F.2d 105, 108 (3d Cir.1985). Specific personal jurisdiction may arise from particular or sporadic contacts if the "claim is related to or arises out of the defendant's contacts with the forum." *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992) (citations omitted); *see also Helicopteros,* 466 U.S. at 414 & 414 n. 8, 104 S.Ct. at 1872 & 1872 n. 8.

■ Once the defendant properly disputes the existence of personal jurisdiction, the plaintiff bears the burden to establish, by a preponderance of the evidence, sufficient facts demonstrating the court's jurisdiction. *See Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). In doing so, plaintiff must present a prima facie case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS,* 960 F.2d at 1223 (citing *Provident Nat'l Bank,* 819 F.2d at 437). The court must accept as true the allegations of the complaint, and resolve disputed issues of fact in favor of the plaintiff. *See Carteret Sav. Bank,* 954 F.2d at 142 n. 1.

■ If the plaintiff establishes a prima facie case supporting personal jurisdiction, the defendant then "bear[s] the burden of showing the unreasonableness of an otherwise constitutional assertion of jurisdiction...." *Mellon Bank (East) PSFS,* 960 F.2d at 1223. In assessing the reasonableness of the court's assertion of jurisdiction, the court evaluates several factors, including: the burden on the defendant, the forum state's interest in the litigation, the plaintiff's interest in pursuing its claims in the state, and the interstate judicial system's interest in the efficient resolution of claims. *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. at 2184–85.

■■ In examining personal jurisdiction under Rule 12(b)(2), the Court must look beyond the pleadings:

A Rule 12(b)(2) motion ... is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir.1984); *see also Mellon Bank (East) PSFS,* 960 F.2d at 1223; *Carteret Sav. Bank,* 954 F.2d at 146.

## 2. Analysis

Plaintiff asserts that the Court has personal jurisdiction over defendant for two reasons: (1) defendant stands in the shoes of Grand Circle Travel because Grand Circle Travel is defendant's independent contractor; and (2) defendant's use of the Internet is equivalent to advertising in New Jersey. The first argument attempts to invoke specific jurisdiction whereas the second argument tries to invoke general jurisdiction. The Court rejects both arguments.

### a. Specific Jurisdiction

■ Plaintiff asserts that a foreign company is subject to personal jurisdiction of a court that has jurisdiction over the company's independent contractor when the company has given the independent contractor the exclusive right to solicit and sell its product. She claims that the Court has jurisdiction over defendant because Grand Circle Travel directly solicited her with advertisements and brochures. Plaintiff relies on *Van Eeuwen v. Heidelberg Eastern, Inc.*, 124 N.J.Super. 251, 306 A.2d 79 (App.Div.1973), and *Rutherford v. Sherburne Corp.*, 616 F.Supp. 1456 (D.N.J.1985), to support her conclusion that jurisdiction is proper in this case. This assertion lacks merit for three reasons.

First, in this case, Grand Circle Travel does not have an exclusive right to solicit and sell defendant's rooms. The agreement provides that Grand Circle Travel will be allotted a certain number of rooms per week at one of defendant's hotels, the Jolly Diodoro Hotel, and that defendant would not accept bookings for the Jolly Diodoro Hotel from five enumerated tour groups or any other group claiming to represent the AARP. Moreover, if Grand Circle did not book the given number of rooms, defendant had the option of accepting reservations from other people.

Second, plaintiff's reliance on *Van Eeuwen, supra,* is misplaced. In *Van Eeuwen,* the defendant gave Heidelberg Eastern, Inc., the exclusive right to distribute its printing press in more than seventy percent of the United States. 124 N.J.Super. at 254, 306 A.2d 79. The plaintiffs filed suit against the defendant and Heidelberg after they were injured while operating the printing press. *Id.* at 253, 306 A.2d 79. The Appellate Division concluded that it had jurisdiction over the defendant because it gave Heidelberg an exclusive right to sell its printing press in certain parts of the United States, because the defendant prepared advertisements and promotional publications for Heidelberg to distribute, and because a substantial amount of business occurred in New Jersey. *Id.* at 256–57, 306 A.2d 79. The panel reasoned that Heidelberg was an "integral spoke in a wheel in which [the defendant] is the hub" because

the defendant created the exclusive distributorship agreement so that its product would be marketed and sold in the United States, including New Jersey. *Id.* at 258–59.

*Van Eeuwen* does not support plaintiff's position for three reasons. First, that case involved a product that was sold in New Jersey whereas this case involves a service that occurred in Italy. Second, Heidelberg had an exclusive distributorship for more than seventy percent of the United States whereas defendant gave Grand Circle Travel the exclusive rights to book rooms for members of the AARP at one of its hotels. Moreover, defendant allotted Grand Circle Travel a limited number of rooms at one of its hotels, and those rooms could be booked to other people if Grand Circle Travel did not book the rooms. Third, defendant did not supply Grand Circle Travel with advertisements or promotional materials. Thus, Grand Circle Travel is not an integral spoke in a wheel in which defendant is the hub. Moreover, *Van Eeuwen* is better suited for cases that arise out of the "stream of commerce" as opposed to a case like the one before the Court that deals with a service.

Finally, the facts of *Rutherford, supra,* substantially differ from those in this case. In *Rutherford,* the plaintiff was injured while skiing in Killington, Vermont. 616 F.Supp. at 1457. The plaintiff was a member of a New Jersey ski club that organized the trip to Killington. *Id.* The defendant, which owned the ski area where the plaintiff was injured, employed a representative to visit ski shops and clubs in New Jersey in order to solicit business for the ski area in Killington. *Id.* In addition, the defendant advertised in four New Jersey newspapers and two national magazines, which were distributed in New Jersey. *Id.* Finally, the defendant estimated how many patrons from New Jersey visited its ski area each year. *Id.* at 1458. Ultimately, the Court concluded that the plaintiff's injury was related to the defendant's forum activities and that the defendant had purposefully directed its activities at New Jersey residents. *Id.* at 1461.

In this case, defendant did not advertise in newspapers, send an employee into New Jersey to solicit business, or calculate how many

of its guests were from New Jersey. In addition, this Court would be hard pressed to find that defendant's affiliation with Grand Circle Travel is tantamount to purposeful availment of New Jersey's laws and benefits. Therefore, the Court finds that specific jurisdiction does not exist.

### b. General Jurisdiction

■ The Supreme Court has long recognized that personal jurisdiction must adapt to progress in technology. *See Hanson,* 357 U.S. at 250–51, 78 S.Ct. at 1237–38. Litigation involving the Internet has increased as the Internet has developed and expanded. Although the Internet is a new medium that raises new issues for the courts, district courts have successfully applied the principles established by *International Shoe* and its progeny to cases involving the Internet. *See, e.g., CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). The cases that have addressed the relationship between the Internet and personal jurisdiction "reveal[ ] that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Manuf. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1996).

The cases dealing with this issue can be divided into three categories. See *id.* The first category includes cases where defendants actively do business on the Internet. *See. e.g., CompuServe,* 89 F.3d 1257. In those instances, personal jurisdiction is found because defendants "enter[ ] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *See Zippo,* 952 F.Supp. at 1124 (citing *CompuServe,* 89 F.3d 1257). The second category deals with situations "where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo,* 952 F.Supp. at 1124 (citing *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996)). The third cat-

egory involves passive Web sites; *i.e.,* sites that merely provide information or advertisements to users. *See Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y. 1996). Districts courts do not exercise jurisdiction in the latter cases because "a finding of jurisdiction ... based on an Internet web site would mean that there would be nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with traditional personal jurisdiction case law...." *Hearst Corp. v. Goldberger,* 1997 WL 97097, at *1 (S.D.N.Y. Feb.27, 1997).

Despite plaintiff's attempts to the contrary, this case clearly belongs in category three. Defendant placed information about its hotels on the Internet as an advertisement, not as a means of conducting business. In the past year, two district courts have refused to exercise jurisdiction over defendants who have a passive connection to the Internet. In *Smith v. Hobby Lobby Stores, Inc.,* 968 F.Supp. 1356 (W.D.Ark.1997), the Court found that an advertisement in a trade publication was an insufficient contact with the forum state because the defendant "did not contract to sell any goods or services to any citizens of Arkansas over the Internet site." *Id.* at 1365. In *Hearst, supra,* the Court concluded that advertising services on the Internet was equivalent to advertising in a national magazine, and that under New York law, such advertisements do not provide the requisite contacts to provide personal jurisdiction. 1997 WL 97097 at *10; *see also Bensusan,* 937 F.Supp. at 301 (finding that creation of Web site is not sufficient to find that defendant purposefully availed himself of forum).

■ This Court agrees with the finding in *Hearst* that advertising on the Internet falls under the same rubric as advertising in a national magazine. This Circuit has consistently held that advertising in national publications "does not constitute 'continuous and substantial' contacts with the forum state." *See, e.g., Gehling v. St. George's School of Medicine,* 773 F.2d 539, 542 (3d Cir.1985); *see also Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 156 (D.N.J.1990)

("In an age of modern advertising and national media publications and markets, plaintiffs' argument that such conduct would make a defendant amenable to suit wherever the advertisements were aired would substantially undermine the law of personal jurisdiction."). In addition, advertising on the Internet is not tantamount to directing activity at or to purposefully availing oneself of a particular forum.

 Thus, the Court finds that exercising jurisdiction over a defendant who merely advertises its services or product on the Internet would violate the Due Process Clause of the Fourteenth Amendment. Exercising jurisdiction in such a case would be unjust and would disrespect the principles established by *International Shoe* and its progeny.

### 3. Plaintiff's Request to Transfer

 Plaintiff requests that the Court transfer the case to the Southern District of New York if it concludes that it does not have jurisdiction. Twenty-eight U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Thus, section 1406(a) mandates that a district court can transfer a case to another district only if the other district has personal jurisdiction over the defendant.

 In this instance, defendant has a subsidiary, Migdal Madison N.V., that owns a hotel in New York City. Migdal Madison is a Curacao corporation. (Def. Resp. to Pl.'s Interrog. No. 2). Plaintiff claims that the New York hotel accepts reservations for all of defendant's hotels in Italy. (Farber Cert. ¶ 6). Thus, plaintiff concludes that a New York court would have jurisdiction over defendant.

 Courts have consistently found that a subsidiary corporation's contacts with the forum are not sufficient grounds to exercise jurisdiction over the parent corporation without a showing of something more than ownership. *See. e.g., Lucas v. Gulf & Western Indus., Inc.,* 666 F.2d 800, 805–06 (3d Cir.

1981); *Pfundstein v. Omnicom Group,* 285 N.J.Super. 245, 253, 666 A.2d 1013 (App.Div. 1995). "Other factors which may have a bearing on the jurisdictional issue are whether the subsidiary played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Lucas,* 666 F.2d at 806. In this case, the evidence is far too scant to determine whether Migdal Madison, N.V., is the alter ego or agent of defendant or whether it is independent of defendant. Thus, the Court cannot determine whether a district court in New York has personal jurisdiction over defendant.

The Court normally does not transfer cases to other districts unless it is certain that the other district has personal jurisdiction over the defendant. If the Court is unsure whether the other district has personal jurisdiction over the defendant, it usually dismisses without prejudice so that the plaintiff does not lose his cause of action. This case, however, presents an unusual situation because if the Court dismisses without prejudice, the statute of limitations will bar plaintiff from bringing a claim.

Although the Court is sensitive to the policies underlying section 1406(a) and to the dockets in other districts, the interests of justice dictate that this case be transferred to the Southern District of New York. The question of whether personal jurisdiction exists in New York should be decided after the transfer.

## CONCLUSION

Thus, the Court finds that it does not have personal jurisdiction over defendant, but will order that the case be transferred to the Southern District of New York.