IT IS FURTHER ORDERED that defendants' motion to alter or amend be and is DENIED.

**MERCURY FOAM CORP.**

v.

**L & N SALES & MARKETING, et al.**

**Civ.A. No. 85–1774.**

United States District Court,
E.D. Pennsylvania.

Sept. 6, 1985.

Stanley H. Cohen, Philadelphia, Pa., Michael J. Sweedler, New York City, for plaintiff.

H. Robert Fiebach, Philadelphia, Pa., for all defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

The plaintiff Mercury Foam Corporation (Mercury) is a manufacturer and marketer of hair curlers which are sold under the trademark of "Styling Stix". Styling Stix are rod shaped flexible foam hair curlers with a wire inserted so that the curler will hold its shape when used. Defendant L & N Sales and Marketing (L & N) (a partnership) is the exclusive distributor in the United States for Schumi Schaper brand hair curlers. Defendants Laurie Cohen (Cohen) and Neal Menaged (Menaged) are the partners of L & N. A Schumi Schaper hair curler is a flexible foam roller with a wire insert to hold the shape of the curler when it is bent or shaped. Schumi Schapers are manufactured in West Germany by defendant Herbert Weisener Kun-

ststoffteile (Weisener). The Schumi Schaper was developed and designed by defendant Heinz Andreas Schumi, Ltd. (Schumi, Ltd.) a business organized under the laws of Great Britain and which is subject to the controlling interest of defendant Heinz Andreas Schumi (Schumi).

Plaintiff Mercury sought a preliminary injunction against defendants here from marketing the Schumi Schapers in a similar trade dress which allegedly creates a likelihood of confusion as to the origin of the Schumi Schapers. The plaintiff contends that because of its recent promotional campaign through various media emphasizing Styling Stix and its packaging, it would be unfair for the defendants here to market the Schumi Schapers in a confusingly similar package which would thus reap the benefits of Mercury's promotion.

Defendants L & N, Cohen and Menaged brought a counterclaim against plaintiff. This counterclaim was joined by defendants Weisener, defendant Schumi, Ltd., and defendant Schumi. Defendants contend in their counterclaim that plaintiff has palmed off on its product and has caused a likelihood of confusion in the market place by plaintiff's various references to a European origin of Styling Stix. Additionally, defendants assert that plaintiff misappropriated trade secrets which were learned while plaintiff was in a position of confidence with defendants. Indeed, plaintiff at one time sought to market Schumi Schapers for the defendants in the United States.

The parties by agreement requested that the cross motions for preliminary injunctive relief be dismissed and that the hearing "be for final relief, on the merits of the case." See my Order of May 14, 1985 in this matter.

Pursuant to Fed.R.Civ.P. 52, the following are the findings of facts and conclusions of law.

FINDINGS OF FACT

1. Schumi Schapers were manufactured and marketed by defendants Schumi Schapers, Ltd. and Weisener in the early 1980's, prior to 1984.

2. The London Sunday Times Magazine of January 15, 1984 cover story featured Schumi Schapers.

3. In early 1983, Bibury, Ltd., who was defendant Weisener's exclusive agent, introduced Schumi Schapers in the United States at a trade show.

4. In early 1985, Bibury, Ltd. appointed L & N to be the exclusive distributor of Schumi Schapers in the United States for the retail trade.

5. In the latter part of 1983 into early 1984, Schumi Schapers were sold in department stores throughout the United States.

6. The Schumi Schapers curler was the focus of a Wall Street Journal article on April 4, 1984.

7. Schumi Schaper curlers were originally marketed in a flexible clear "poly bag". This bag permitted the display of the Schumi Schaper curlers. There were ten Schumi Schaper curlers to a bag. The Schumi Schapers were individually colored red, blue or yellow and were arranged in an alternating pattern so that no two adjacent Schumi Schaper curlers were the same color. The curlers were sold in two different sizes, long curlers approximately 10½ inches in length and short curlers approximately 4½ inches in length. The two different lengths were sold separately. Each of the packages contained a black and white picture of models demonstrating the use of the Schumi Schapers curlers.

8. In the spring of 1984, plaintiff began experimenting with the idea of manufacturing and/or marketing flexible curlers similar to the Schumi Schapers curlers.

9. In May of 1984 plaintiff's agent, Mr. Buff, met with defendants Mr. Schumi and Mr. Weisener to discuss the possibility of plaintiff's agent serving as a distributor and/or manufacturer of the Schumi Schaper curlers under license.

10. In June 1984, another meeting was held between plaintiffs and defendants concerning marketing Schumi Schapers through the plaintiff.

11. Defendants did not establish at the hearing that any confidential or proprietary information was conveyed to plaintiff during the two meetings.

12. During the late spring through the summer of 1984, plaintiff decided to produce and market its own flexible curler. The curler construction was similar to the Schumi Schaper curler.

13. Plaintiff developed a package design which was not unique. The package design included a clear vacuum formed tray which would act as a travel case and holder for the curlers.

14. Plaintiff marketed its curler under the name Styling Stix. The Styling Stix are each a different pastel color. The Styling Stix are enclosed in the clear vacuum package against a black cardboard. The dark background provides sufficient contrast against the pastel colored Styling Stix thus emphasizing the Styling Stix. On the black cardboard which is not covered over by the Styling Stix, are three models which demonstrate the uses of the Styling Stix.

15. Clear vacuum form packaging is used by a wide array of consumer goods and by itself is not inherently distinctive.

16. The contrasting color array of the curlers of both parties, creates the strongest visual impression when viewing the packages.

17. Plaintiff, in various marketing literature and promotional materials, has represented its product as "now in America ... the revolutionary styling device that's causing waves and getting raves all over Europe." Styling Stix have not been marketed or sold in Europe. This type of promotion creates an inference, thus confusion, that plaintiff's product's origin is the same as defendant Schumi Schapers.

18. Certain promotional aids used by plaintiff contained pictures of Schumi Schapers in "poly bags" with the statement "European Import product". Without differentiating Schumi Schapers from Styling Stix, it created the inference and the likelihood of confusion that Styling Stix have the same origin as Schumi Schapers.

19. After the Styling Stix product was marketed, Schumi Schapers redesigned its package, disposing of the poly bag and adopting a clear vacuum form package. The new package had some features of Schumi Schapers' earlier package. Indeed, the new package had certain models who demonstrated the use of the product. The focal point of the new package, as was the old one, and certainly the Styling Stix package, is the contrasting colors of the curlers.

## DISCUSSION

Plaintiff seeks an injunction against defendants, enjoining defendants from distributing or marketing Schumi Schapers in its present package design, and from marketing or importing any type of foam rod shaped curler which is confusingly similar to Styling Stix. Plaintiff seeks an injunction requiring the defendants to recall all of their curlers which have not been distributed to the final consumer. Plaintiff seeks an order prohibiting further advertising of Schumi Schapers. Last, plaintiff seeks damages and requests an accounting of defendants' profits which resulted from the alleged infringement. Plaintiff requests treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

Conversely, defendants request an injunction against plaintiff enjoining defendants from: trading upon the good will of Schumi Schapers; offering for sale, selling or distributing soft flexible foam hair curlers in a multi-colored format in a size and shape identical or deceptively similar to the size and shape of the Schumi Schapers. Further, defendants seek to enjoin plaintiff from directly or indirectly representing or otherwise holding plaintiff out as related to or sponsored by or successor to any interest of Schumi, Ltd. or its affiliates; or in any manner palming off plaintiff's product as that of defendants. Specifically, defendants seek to prohibit plaintiff from making any reference to a European origin of Styling Stix and from using pictures of the Schumi Schapers in plaintiff's advertising when it is not clearly stated that the product shown is not the product of plaintiff. Defendants additionally seek the destruc-

tion of plaintiff's product, packages or promotional material which bear a confusingly similar likeness to the Schumi Schapers product. Last, defendant seeks treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

The parties rely principally upon 15 U.S.C. § 1125, Section 43(a) of the Lanham Act for their causes of action. Section 1125 states:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

(b) Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

■ Additionally, the parties rely upon common law unfair competition.[1]

■ Indeed, here each of the parties contend that the other party has used confusingly similar trade dress which creates a likelihood of confusion of origin of the product. "Trade dress" is a concept which embraces the total image of a given product, including advertising materials and marketing techniques used to promote its sale. *John Wright, Inc. v. Casper Corporation,* 419 F.Supp. 292 (E.D.Pa.1976) (citing McCarthy, *Trademarks and Unfair Competition,* § 8.1 at pp. 230–231 (1973)), *affirmed in part, reversed in part on other grounds,* 587 F.2d 602 (3d Cir.1978). For a party to violate unfair trade law, it must misrepresent its product's origin, or it must create a likelihood of confusion as to its product's origin, or make false representations or descriptions of its product.

■ The fact that two competitors have similar trade dress may not be sufficient to establish an unfair trade violation. *John Wright, Inc.,* 419 F.Supp. at 318. A party, to establish palming off on his product's trade dress, must show his trade dress is inherently distinctive or has acquired secondary meaning. *John Wright, Inc.; Chevron Chemical Company v. Voluntary Purchasing Groups,* 659 F.2d 695 (5th Cir.1981). Thus, once secondary meaning, or inherent distinctiveness is established, likelihood of confusion as to the source of the product must be shown.

■ If a package design is commonly used or is functional, it cannot be the focus of a trade dress infringement action.

CONCLUSIONS OF LAW

■ 1. The clear vacuum formed tray/package in which plaintiff sells its Styling Stix is primarily functional and is commonplace. It is not inherently distinctive with no secondary meaning being established by plaintiff.

2. The black background which plaintiff uses in its packaging to set off its brightly colored curlers is not inherently distinctive

---

1. Pennsylvania common law is identical to the Lanham Act, 15 U.S.C. § 1125, except that the Lanham Act requires interstate commerce. *Ar-* *tus Corporation v. Nordic Co., Inc.,* 512 F.Supp. 1184, 1187 (W.D.Pa.1981).

and no secondary meaning has been established by plaintiff.

3. The various pictures of models demonstrating the uses of Styling Stix on its packages is functional in nature and not inherently distinctive.

4. The various pictures of models demonstrating the uses of Schumi Schapers on its packages is functional in nature and not inherently distinctive.

5. Defendant did not establish that any trade secrets were conveyed to plaintiff while the parties were in various business negotiations.

6. The plaintiff has falsely described its product by inferences in its promotional material that it is from Europe, and that it has a European origin, and, therefore, contrary to 15 U.S.C. § 1125.

7. The plaintiff has wrongly inferred that its product had European origins by showing pictures of Schumi Schapers in various promotional materials and, therefore, contrary to 15 U.S.C. § 1125.

8. Defendants do not have an adequate remedy at law.

### ORDER

AND NOW, this 6th day of September, 1985, upon consideration of plaintiff Mercury Foam Corporation's petition for an injunction and other relief, and defendants L & N Sales and marketing, Herbert Weisener Kunststoffteile, Heinz Andreas Schumi, Ltd., and Heinz Andreas Schumi's petition for an injunction and other relief, and after reviewing the briefs and documents the parties have submitted for my consideration, and after conducting a lengthy hearing in this matter, it is ORDERED that:

1. Plaintiff's petition for an injunction and other relief is DENIED

2. Defendants' petition for an injunction and other relief is GRANTED in the following manner. Plaintiff and its agents are enjoined from representing or promoting to the ultimate consumer or any intermediary that its product Styling Stix has any connection with or an origin in Europe. Additionally, plaintiff must contact each and every buyer or any other person or party it has solicited who may have received erroneous or misleading information concerning the origin of the Styling Stix and inform such persons or buyers that Styling Stix has no connection or origin in Europe or any product that has been marketed previously in Europe. Last, plaintiff is prohibited from using any pictures of Schumi Schapers in any of its promotional materials.