**GINGER GROUP, LTD.**

v.

**BEATRICE COMPANIES, INC. and Tropicana Products, Inc.**

**Civ. A. No. 87–4902.**

United States District Court,
E.D. Pennsylvania.

Jan. 29, 1988.

1. *See* Stipulation filed December 14, 1987.

Richard G. Tuttle, Philadelphia, Pa., for plaintiff.

Michael R. Dillon, Morgan, Lewis & Bockius, Philadelphia, Pa., Janet R. Studley, Mitchell H. Stabbe, Holland & Knight, Washington, D.C., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this non-jury case, bifurcated for trial, the plaintiff, Ginger Group, Ltd. ("Ginger Group"), claimed that defendants Beatrice Companies, Inc. ("Beatrice") and Tropicana Products, Inc. ("Tropicana") infringed Gin-

ger Group's trademark in violation of the Lanham Act, 15 U.S.C. Section 1125(a); diluted plaintiff's trademark in violation of the Pennsylvania Trademark Act, 54 Pa.C. S.A. Section 1124; and engaged in unfair competition in violation of the common law. In addition to damages, plaintiff sought injunctive relief barring defendants from using a design "which depicts a whole apple, a half apple, and a drop of juice, or any design similar thereto, in connection with sales of apple juice".

After reviewing the testimony presented at trial, the exhibits submitted by the parties, and the stipulation of facts agreed to by the parties, this Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff Ginger Group, a corporation engaged, inter alia, in the business of selling beverages, first sold apple cider under the brand name, "Scrumples Apple Cider", in 1981. In the Fall of 1982, the plaintiff designed and placed on its sixteen ounce bottles of "Scrumples Apple Cider" a graphic design consisting of a whole apple standing behind a half-apple tilted to the right, with a drop of juice flowing from the bottom of the half-apple. In October 1982, plaintiff started bottling "Scrumples Apple Cider" in twelve ounce brown beer bottles. In March 1983, plaintiff began bottling apple juice, produced by depectinizing or removing all pulp material from apple cider, in the twelve ounce brown beer bottles and sold it under the brand name, "Elliott's Apple Juice".

In March 1985, plaintiff changed the name of its apple juice to "Elliott's Amazing Apple Juice" and altered the composite design on its bottle labels to reflect that change. While plaintiff sells "Elliott's Amazing Apple Juice" in quart and half-gallon bottles and cans, the large majority of its product is sold in twelve ounce "little brown beer bottles" with a label consisting of a composite design which includes the brand name "Elliott's Amazing" in yellow letters with the words "Pure & Natural" in white letters above the design of a whole apple standing behind and to the left of a

half apple tilted to the right with a drop of apple juice flowing from the half apple. Plaintiff's apple design also includes a leaf on the stem of each apple. This entire composite design appears within a green circle with a black background which, in turn, appears on a bright blue background. The words "Apple Juice" in red letters appears at the top of the blue background. The words "Up Your Apples" in white letters appears on a red bottle cap. "Elliott's Amazing Apple Juice" is sold in approximately 5,000–8,000 retail outlets throughout the eastern United States. Plaintiff engages in a limited amount of advertising consisting of radio advertisements, point of sale displays, and promotions. In each of these activities, plaintiff promotes its product as the apple juice sold in a "little brown beer bottle".

In early 1986, defendant Tropicana began to sell single serving bottles and cartons of apple juice made from concentrate. The label design for these containers was created in 1985 by a consultant, International Paper Company, and was derived from the designs created in 1984 by another consultant, the Schechter Group, for defendant Tropicana's orange juice products. Neither the defendants nor the design consultants were aware of the design used by plaintiff on bottles of "Elliott's Amazing Apple Juice" during the design of defendant Tropicana's labels.

Defendant Tropicana sells its apple juice in seven ounce and ten ounce clear bottles with a label consisting of a composite design which includes the words "Tropicana" and "Apple Juice from Concentrate" in green letters to the left of a design of a whole apple directly behind a half apple tilted to the right with a drop of juice flowing from the bottom of the half apple along with three leaves. Defendant Tropicana's design also includes a picture of a little girl named "Tropic–Ana" standing in front of the apples. The entire design appears on a beige pinstriped background. The only significant difference in the labels used on defendant Tropicana's thirty two ounce bottles and sixteen ounch cartons is

that the whole apple is to the right of the half apple.

The overall sale of single serving juices is steadily increasing in the United States with the most pronounced growth occurring in single serving apple juice sales. Plaintiff Ginger Group, defendant Tropicana, and numerous other beverage companies sell apple juice in single serving containers in the same retail outlets. In most instances, the competing brands of apple juice are displayed side by side in one or more display cases or coolers. Many of these other brands have labels displaying apples and/or half apples.

In March 1986, plaintiff contacted defendant Tropicana and claimed exclusive rights to the use of a label depicting an apple, a half apple and a drop of apple juice in connection with the sale of apple juice. Plaintiff claimed that defendant Tropicana's use of a label on its apple juice containers depicting an apple, half apple, and a drop of juice infringed plaintiff's "trademark" and demanded that defendant Tropicana cease using the label. Defendant Tropicana refused.

## CONCLUSIONS OF LAW

Under both the common law and the Lanham Act, 15 U.S.C. §§ 1051–1127, owners of trademarks are protected from other marks that are likely to cause confusion. *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir.1978). Federal courts have long held that this protection extends to unregistered trademarks on the "principle that unlicensed use of a designation serving the function of a registered mark constitutes a false designation of origin and a false description or representation." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir.1986). However, a designation may only receive protection if the public recognizes it as identifying the claimant's "goods or services and distinguishing them from those of others." 1 J. McCarthy, *Trademarks and Unfair Competition* § 15:1 at 657 (2d ed. 1984).

In order to determine whether a particular mark has achieved sufficient public identification to warrant protection, courts classify such marks into four categories of distinctiveness:

> [A]rbitrary (or fanciful) terms which bear no logical or suggestive relation to the actual characteristics of the goods; suggestive terms; which suggest rather than describe characteristics of the goods; descriptive terms, which describe a characteristic or ingredient of the article to which it refers; and generic terms, which function as the common or descriptive name of a product class.

*A.J. Canfield Co. v. Honickman, supra,* 808 F.2d at 296; *see also* 1 McCarthy, *supra* § 11:1, at 433–34; *American Diabetes Ass'n v. National Diabetes Ass'n,* 533 F.Supp. 16, 19 (E.D.Pa.1981); *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 374 (1st Cir.1980); *Miller Brewing Co. v. Heilemen Brewing Co.,* 561 F.2d 75 (7th Cir. 1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). To be sure, courts and commentators alike recognize the difficulty of classifying such marks since "[t]hese categories, like colors in a spectrum, tend to blur at the edges and merge together, making it difficult to apply the appropriate level." *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1325 (8th Cir.1984); *accord* 1 McCarthy, *supra* § 11:1, at 433–34; Callmann, *The Law of Unfair Competition, Trademarks and Monopolies,* 66 (Cum.Supp.1982).

Despite the inherent difficulties in classifying marks, courts must place all marks on this spectrum of distinctiveness in order to determine whether the mark should be afforded legal protection. Marks which are classified as either arbitrary or suggestive are treated as distinctive and automatically qualify for trademark protection. *A.J. Canfield Co. v. Honickman, supra,* 808 F.2d at 297; *Keebler Co. v. Rovira Biscuit Corp., supra,* 624 F.2d at 374. If a mark is classified as descriptive, however, it is entitled to protection *only if* it has become distinctive to the consumer as identifying the source of origin of a product and, therefore, has acquired a secondary meaning. *Scott Paper Co. v. Scott's Liquid Gold, Inc., supra,* 589 F.2d

at 1228. Finally, if a mark is classified as generic, it can never receive protection "because even complete 'success ... in securing public identification ... cannot deprive competing manufacturers of the product of the right to call an article by its name." *A.J. Canfield Co. v. Honickman, supra,* 808 F.2d at 297 *quoting Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976); *see also Walker–Davis Publications, Inc. v. Penton/IPC, Inc.,* 509 F.Supp. 430 (E.D.Pa.1981).

■ Because a nonregistered mark has no presumption of validity as a trademark, the burden of proving plaintiff's unregistered apple and a half with a drop design sufficiently distinctive to warrant protection, lies squarely on the plaintiff. *A.J. Canfield Co. v. Honickman, supra,* 808 F.2d at 297; *see also Technical Publishing Co. v. Lebhar–Friedman, Inc.,* 729 F.2d 1136 (7th Cir.1984); *Reese Publishing Co. v. Hampton Int'l Communications,* 620 F.2d 7, 11 (2d Cir.1980). This Court concludes that plaintiff has failed to carry its burden of proof in this case. The Court finds that the plaintiff's mark of an apple and a half with a drop fits the classification as being descriptive and the plaintiff has failed to carry its burden or proving that the apple and a half with a drop mark has acquired a secondary meaning.

■ The Third Circuit, in *A.J. Canfield v. Honickman, supra,* provided an operational definition of a descriptive mark:

A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

808 F.2d at 297 *quoting Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y. 1968). A descriptive trademark is one that permits the consumer to determine attributes of the product without having to significantly use his or her imagination. See *Restatement of Torts,* § 721, Comment a (1938). As one commentator has said:

[T]he question is how immediate and direct is the thought process from the mark to the particular characteristic of the product. Thus, if one must exercise mature thought or follow a multi-stage reasoning process to determine attributes of the product or service, the term is suggestive, not descriptive ... If the mental leap between the [mark] and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness.

1 McCarthy, *supra* § 11:21, at 491–92; *see also Security Center, Ltd. v. First Nat. Security Centers,* 750 F.2d 1295 (5th Cir. 1985); *Educational Dev. Corp. v. Economy Co.,* 562 F.2d 26 (10th Cir.1977). Based upon the evidence in this case, the Court concludes that the plaintiff's apple and a half with a drop mark is not suggestive as calimed by the plaintiff.

■ Plaintiff's mark of an apple and a half with a drop directly conveys to the consumer, almost instantaneously, without need of a multi-stage reasoning process that the product in the little brown bottle is apple juice. It requires little or no imagination for an average consumer to conclude that plaintiff's product is apple juice. It is hard to conceive of a more explicit symbol or design for apple juice than a picture of an apple and a half with a drop of juice on a bottle. Indeed, as the evidence in this case points out, many companies which sell apple juice employ labels depicting an apple or parts of an apple. As pointed out by the Fifth Circuit in *Exxon Corp. v. Texaco Motor Exchange of Houston, Inc.,* 628 F.2d 500, 504 (5th Cir.1980), the greater the number of similar trademarks in use, the more likely the trademark is not afforded legal protection. *See also* Restatement of Torts, § 729, comment g (1938). Moreover, as the record shows, many companies which sell orange juice and grapefruit juice also employ labels which depict a picture of oranges or grapefruit on its labels.

As previously stated, a descriptive trademark, such as plaintiff's, can achieve protection only if it is shown to have acquired a secondary meaning. *See American Home Products Corp. v. Barr Laboratories,* 834 F.2d 368, 370 (1987). The Third Circuit, in *Scott Paper Co. v. Scott's Liq-*

**560**

uid Gold, Inc., supra, 589 F.2d at 1225, defined secondary meaning:

> Secondary meaning exists when the trademark is interpreted by the consuming public to be not only an identification of the product, but also a representation of the product's origin.

Indeed, "[s]econdary meaning is the creation of a meaning in a common term so that, in the public's mind, the [mark] connotes a particular source." *United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d Cir.1981). Thus, while the public is not required to identify the actual name of the manufacturer/trademark owner, the public must perceive that the product emanates from a single source. *Premier Dental Products v. Darby Dental Supply Co.,* 794 F.2d 850, 856 (3d Cir.1986). The "prime element of secondary meaning is a mental association in buyers' minds between the alleged mark and a single source of the product." 1 J. McCarthy, *supra* § 15:2 at 659. *See also Aloe Creme Laboratories, Inc. v. Milsan, Inc.,* 423 F.2d 845 (5th Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970).

As heretofore pointed out, the burden of proving a secondary meaning is upon the party alleging infringement of a descriptive mark. 1 J. McCarthy, *supra* § 15:11 at 686; *Scott Paper Co. v. Scott's Liquid Gold, Inc., supra,* 589 F.2d at 1228; *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 816 (1st Cir.1987). In determining whether the plaintiff has met its burden of proving secondary meaning, the Court must consider: (1) the length and manner of the use of the mark, (2) the nature and extent of advertising and promotion, (3) other efforts at creating a conscious connection in the public's mind between the mark and the product, (4) the size of the company and its share of the market, and (5) testimony of buyers that the mark connotes a particular product. *See Scott Paper Co. v. Scott's Liquid Gold, Inc., supra,* 589 F.2d at 1228; *American Diabetes Ass'n v. National Diabetes Ass'n,* 533 F.Supp. 16, 19 (E.D.Pa.1981); 1 J. McCarthy, *supra* § 15:10 at 684–85; *Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208 (2d Cir.1985); *Conagra, Inc. v. Singleton,* 743 F.2d 1508 (11th Cir.1984).

As heretofore pointed out, the plaintiff in this case failed to carry its burden of showing its mark of an apple and a half with a drop has acquired a secondary meaning. Indeed, plaintiff had only used the trademark for some two years prior to the alleged patent infringement by defendant Tropicana. During that time, plaintiff engaged in only modest advertising in which it promoted its product as the apple juice in "the little brown beer bottle" and not as the apple juice with an "apple and a half with a drop" on the label. Moreover, plaintiff adduced no evidence of other efforts undertaken to create a conscious connection in the public's mind between the trademark and the product. Further, plaintiff acknowledged that it was but one of at least a score of companies marketing apple juice and conceded that many of its competitors had a larger share of the market. Finally, with the exception of certain hearsay statements which this Court may not consider, plaintiff introduced no testimony or evidence concerning the consumer's state of mind, vis-a-vis, the alleged secondary meaning of its apple design.

As heretofore pointed out, plaintiff brought this action based upon trademark claims of: (1) infringement brought under the Lanham Act, 15 U.S.C. § 1125(a); (2) common law trademark infringement and unfair competition; and (3) trademark dilution brought under the Pennsylvania Trademark Act, 54 Pa.C.S. § 1124. Because plaintiff has not met its burden of proving that the apple and a half with a drop design is a protectable trademark, a necessary element of a cause of action under either the Lanham Act or Pennsylvania Trademark Act, judgment will be entered on behalf of defendants Beatrice Companies, Inc. and Tropicana Products, Inc. on Count I (violation of the Lanham Act) and Count III (violation of Pennsylvania Trademark Act). Moreover, because plaintiff has failed to meet its burden of proving that the apple and a half with a drop mark has acquired a secondary meaning, a necessary element under the common law cause

of action of unfair competition, *see Kirkland v. National Broadcasting Co., Inc.,* 425 F.Supp. 1111, 1115 (E.D.Pa.1976), *aff'd,* 565 F.2d 152 (3d Cir.1977), *see also Mercury Foam Corp. v. L & N Sales & Marketing,* 625 F.Supp. 87, 91 (E.D.Pa.1985) (Pennsylvania common law of unfair competition identical to Lanham Act except for interstate commerce requirements), summary judgment will be entered in favor of defendants Beatrice Companies, Inc. and Tropicana Products, Inc. on Count II (unfair competition).