Bernard M. RESNICK, Esq.

v.

Angel MANFREDY, John Manfredy, Jeffrey H. Brown, Esq., and D'Ancona & PFlaum

No. Civ.A. 99–CV–0022.

United States District Court, E.D. Pennsylvania.

April 29, 1999.

Louis J. Capozzi, Jr., Samuel B. Fineman, Capozzi & Associates, P.C., Harrisburg, PA, for plaintiff.

Kenneth I. Trujillo, Louis C. Ricciardi, Trujillo Rodriguez & Richards, The Penthouse, Philadelphia, PA, Peter Petrakis, Lisa L. Marré, D'Ancona & Pflaum, LLC, Chicago, IL, for defendants.

## AMENDED MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendants have moved to dismiss this action for lack of *in personam* jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(2) and (6). Alternatively, they argue that venue in this district is improper and request that this matter be transferred to the Northern District of Illinois. For the reasons which follow, the motion is granted in part and denied in part.

### History of the Case

Bernard Resnick is "a well-known and reputed attorney engaged in the practice of sports and entertainment law" who has been licensed to practice law in Pennsylvania and the District of Columbia since 1987.[1] This action (like the *Remick* matter) arises out of a now-terminated fee agreement which Angel Manfredy entered into with Plaintiff Resnick's colleague,

---

1. This action is a companion action and is nearly identical to the case of *Remick v. Man-* *fredy, et. al.,* Civil Action No. 99–0025.

Lloyd Remick on to act as lightweight boxer Angel Manfredy's special counsel/sports agents in the procurement, negotiation and drafting of boxing, promotions and endorsement agreements.

According to the plaintiff's complaint in this case, they were retained by Manfredy in large part because his current counsel, Defendant Brown, an associate attorney with the defendant law firm D'Ancona & Pflaum, had little experience in drafting and/or negotiating boxing agreements. (Pl's Compl., ¶ 14). Mr. Brown is alleged to have represented Angel Manfredy in negotiating the fee agreement with Remick and his then-law firm, Burditt & Radzius in an arms-length transaction. (Complaint, ¶ 16). In consideration for their services, Remick and Resnick were to receive 5% of Angel Manfredy's boxing compensation up to the first $35,000 received by Manfredy for his first boxing match under the agreement and 8% of his compensation for all matches thereafter. Additionally, Remick and Resnick were to receive 15% of the gross amount earned for any endorsements and appearances which they procured for Manfredy. Then, as between them, Remick and Resnick were to split any fees they received in working for Manfredy 75/25, with Remick receiving 75% and Resnick receiving 25% of the earned income. (Complaint, ¶s 12, 13, 15). Any fees arising therefrom remained due and owing to Remick and Resnick upon Manfredy's receipt for the duration of any agreement which plaintiff and his colleague negotiated on Manfredy's behalf. (Complaint, ¶ 17).

Despite the fact that Remick and Resnick secured a long-term promotional agreement with Cedric Kushner Promotions and a Future Rights Agreement with Main Events Corporation for Manfredy one month after they were retained to represent him, both of which called for the payment of purses in the minimum amount of $250,000, by letter dated March 2, 1998, Angel Manfredy terminated Remick's services citing a unified lack of strategy and Resnick's allegedly ineffective negotiation skills. (Complaint, ¶s 18–19). Plaintiff contends that defendants John Manfredy and Jeffrey Brown assisted Angel Manfredy in drafting this letter, prevented plaintiff from speaking with Manfredy directly and otherwise induced Angel Manfredy to terminate his professional relationship with he and Remick. (Complaint, ¶s 19, 25, 32–33). Plaintiff further alleges that defendants Brown and John Manfredy have made disparaging and untrue comments about him both orally and in writing to third parties including promoter Cedric Kushner and Lou DeBella of Home Box Office for the sole purpose of harming plaintiff's business. (Complaint, ¶s 30–31). In reliance upon these allegations, plaintiff seeks damages from the defendants for breach of contract, defamation, tortious interference with contractual relations, unfair competition/disparagement and for purported violations of his right to publicity, which claim appears to be in the nature of one for misappropriation of his likeness.

Defendants move, as they did in the *Remick* action, to dismiss the plaintiff's complaint for lack of personal jurisdiction and proper venue or, alternatively for transfer to the Northern District of Illinois.

### Standards Applicable to 12(b)(2) Motions

Inasmuch as lack of personal jurisdiction is a waivable defense under Fed.R.Civ.P. 12(h)(1), it is incumbent upon the defendant to challenge it by filing a motion to dismiss under Rule 12(b)(2). *See, e.g.: Clark v. Matsushita Electric Industrial Co., Ltd.,* 811 F.Supp. 1061, 1064 (M.D.Pa. 1993). Once done, the burden shifts to the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1121 (W.D.Pa.1997). The plaintiff meets this burden by making a prima facie showing of "sufficient contacts between the defendant and the forum state." *Id.,* quoting

*Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1223 (3rd Cir.1992) and *Carteret Savings Bank, F.A. v. Shushan,* 954 F.2d 141, 146 (3rd Cir.1992).

A Rule 12(b)(2) motion is inherently a matter which requires resolution of factual issues outside the pleadings. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. *Weber v. Jolly Hotels,* 977 F.Supp. 327, 331 (D.N.J.1997) citing, *inter alia, Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67, n. 9 (3rd Cir.1984). At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, the plaintiff must respond with actual proofs, not mere allegations. *Id.*

### Discussion

■ Under Fed.R.Civ.P. 4(e), a district court is permitted to assert personal jurisdiction over a non-resident to the extent allowed under the law of the state where the district court sits. *Time Share Vacation Club,* 735 F.2d at 63. In Pennsylvania, the long-arm statute extends jurisdiction to the "fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Santana Products, Inc. v. Bobrick Washroom Equipment,* 14 F.Supp.2d 710, 713 (M.D.Pa.1998); 42 Pa.C.S. § 5322(b). In other words, the reach of jurisdiction under Pennsylvania law is coextensive with the Due Process Clause of the United States Constitution. *Id.*

■ "The constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in or purposely directed its activities toward residents of the forum state." *As-ahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 108, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ There are two theories under which a defendant may be subject to personal jurisdiction. If the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court there, that defendant may be subject to the state's jurisdiction under the concept of "specific jurisdiction." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Santana Products, Inc., supra,* at 713; *Allied Leather Corp. v. Altama Delta Corp.,* 785 F.Supp. 494, 497 (M.D.Pa.1992). "General jurisdiction" exists when the plaintiff's cause of action arises from the defendant's non-forum related activities. To establish general jurisdiction, the plaintiff must show that the defendant has maintained continuous and systematic contacts with the forum. *Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products, Co.,* 75 F.3d 147, 151 (3rd Cir.1996); *National Paintball Supply, Inc. v. Cossio,* 996 F.Supp. 459, 461 (E.D.Pa.1998).

Plaintiff here contends that this Court has *both* general and specific personal jurisdiction over each of the defendants because both Angel Manfredy and D'Ancona & Pflaum solicit business in Pennsylvania through their Internet web sites and because in retaining plaintiff and his colleague to represent him, Angel Manfredy consciously chose to conduct business with two Pennsylvania residents.

It is indisputable that in very recent years the Internet has drastically changed the way the world does business—it is now possible to conduct business and to provide information and products to consumers and other businesses entirely from a desk-

top computer. *See, e.g.: American Civil Liberties Union v. Reno,* 929 F.Supp. 824, 830–848 (E.D.Pa.1996). Although there is scant authority on the subject of whether offering Internet access will confer personal jurisdiction over an individual or entity in a given state, we recently had occasion to address this issue in *Blackburn v. Walker Oriental Rug Galleries, Inc.,* 999 F.Supp. 636 (E.D.Pa.1998) and we believe our summary of the law of the area there is equally applicable in this action: .

In analyzing a defendant's contacts through the use of the Internet, the probability that personal jurisdiction may be constitutionally exercised is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Manufacturing Co. v. Zippo Dot Com., Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). Three types of contacts have been identified in order to determine the existence of personal jurisdiction. *Weber v. Jolly Hotels,* 977 F.Supp. 327, 333 (D.N.J.1997). The first type of contact is when the defendant clearly does business over the Internet. *Id.* "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Zippo,* 952 F.Supp. at 1124 (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996)). The second type of contact occurs when "a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Zippo,* at 1124 (citing *Maritz, Inc., v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996)); *Weber,* 977 F.Supp. at 333. The third type of contact involves the posting of information or advertisements on an Internet Web Site which is accessible to users in foreign jurisdictions. *Zippo,* 952 F.Supp. at 1124; see *Weber,* 977 F.Supp. at 333; *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). Personal jurisdiction is not exercised for this type of contact because "a finding of jurisdiction ... based on an Internet web site would mean that there would be nationwide (indeed, world wide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with personal jurisdiction case law ..." *Weber,* 977 F.Supp. at 333 (quoting *Hearst Corp. v. Goldberger,* 1997 WL 97097, at *1 (S.D.N.Y.1997)). 999 F.Supp. at 638–639.

In this case, it is clear from the face of the plaintiff's complaint that all of the defendants with the exception of Angel Manfredy are residents of the State of Illinois. Angel Manfredy is an Indiana resident. Defendants Angel Manfredy, John Manfredy and Jeffrey Brown have provided affidavits attesting that they do not own property and do not conduct business in Pennsylvania, save for their telephonic or written contacts with Messrs. Resnick and Remick which were all made or originated from Illinois. Their only physical contacts with Pennsylvania have come in the course of traveling to and from other locations and on personal matters.

According to the affidavit of the managing partner of the law firm defendant, D'Ancona & Pflaum is a general practice firm comprised of 100 attorneys, all of whom work in the Chicago office and are residents of Illinois. The firm does not have a Pennsylvania office or affiliate, although it does have records of having a total of 54 past and present clients in the Commonwealth of Pennsylvania.

In addition, both Angel Manfredy and D'Ancona & Pflaum maintain Internet web sites which may be accessed by typing in the addresses "www.eldiabloboxing.com" and "www.dancona.com," respectively. Through his web site, Angel Manfredy provides information regarding his personal history and activities and his history and

record as a professional boxer, any upcoming fights, photographs and information on what it takes to become a successful boxer. Through this site, Manfredy offers photographs and other memorabilia, fan club memberships, and various types of merchandise such as "El Diablo" t-shirts and baseball caps for sale. According to John Manfredy, who is Angel Manfredy's manager and the creator of the web page, while order forms for merchandise may be downloaded from the web site, merchandise orders are only taken through the mail and there have been no sales of merchandise or fan club memberships to anyone in Pennsylvania to date.

D'Ancona & Pflaum's web page, in turn, is similar in that it offers information concerning the firm's attorneys, practice areas and specialties, and the firm's speaker's bureau. While it may offer slightly more information, the information and data offered over this web site essentially mirrors that which is provided in the Martindale–Hubbel Legal Directory.

In comparing the web sites at issue in this case with the three types of sites which were reviewed in *Walker, Weber* and *Zippo,* all *supra,* we find that the Defendants' web sites are "passive" in nature in that there is no evidence that they are interactive or offer anything other than general information and advertising. Advertising on the Internet has been held to fall under the same rubric as advertising in a national magazine and it is well settled law in this Circuit that advertising in a national publication does not constitute the 'continuous and substantial contacts with the forum state' required to give rise to a finding of general jurisdiction. *See: Weber,* 977 F.Supp. at 333, citing *Gehling v. St. George's School of Medicine,* 773 F.2d 539, 542 (3rd Cir.1985) and *Hearst Corp. v. Goldberger, supra,* 1997 WL 97097 at \*10. Accordingly, we reject the plaintiff's claim that this Court has general personal jurisdiction with respect to Angel Manfredy, John Manfredy, or Jeffrey Brown.

We likewise reject the plaintiff's contention that specific personal jurisdiction over the defendants may be found here by virtue of the fee agreement which his colleague Remick had with Angel Manfredy. In this regard, the plaintiff claims that since Manfredy asked that he and Remick represent him, Manfredy targeted Pennsylvania and it was therefore foreseeable that any "effects" of Manfredy's breach of the fee agreement would be felt in Pennsylvania. We disagree.

In the absence of any contacts with Pennsylvania, the fact that harm is felt in Pennsylvania from conduct occurring outside the state is not sufficient to satisfy due process unless the defendant targets Pennsylvania through the tortious conduct. *Santana Products, supra,* at 715, citing *inter alia, Surgical Laser Techs. v. C.R. Bard, Inc.,* 921 F.Supp. 281, 285 (E.D.Pa.1996), *Supra Medical Corp. v. McGonigle,* 955 F.Supp. 374, 382 (E.D.Pa. 1997). Here, accepting as true Plaintiff's contention that it was Manfredy who contacted he and Remick, the fee agreement nevertheless called for **Remick and Resnick** to provide services to Manfredy, who resides in Indiana. By his own pleading, Plaintiff avers that he is "a well-known and reputed attorney engaged in the practice of sports and entertainment law" and is and was "engaged in an ongoing business relationship with prominent Philadelphia sports and entertainment lawyer Lloyd Remick." (Complaint, ¶s 10–12). Remick's complaint, in turn avers that he has a "national practice specializing in sports and entertainment law," through which **he** presumably targets and conducts business on behalf of out-of-state residents and on the soil of states other than Pennsylvania. (Remick Complaint, ¶ 13).

What's more, there is no evidence that any of the fights which Remick and Resnick purportedly secured for Manfredy were to take place in Pennsylvania, or that Manfredy executed the fee agreement or any endorsement, promotional or fight agreements in Pennsylvania. Mr. Manfre-

dy's affidavit reflects that the only time he has been in Pennsylvania was to deplane at the Philadelphia airport *en route* to Atlantic City, NJ. In short, there is no evidence to suggest that Angel Manfredy in any way directed his activities toward the Commonwealth of Pennsylvania, other than retaining an attorney with a national practice whose office, along with that of his colleague, is located in Philadelphia and who are members of the Pennsylvania Bar. We do not find this sole contact between Mr. Manfredy and Messrs. Remick and Resnick to be sufficient to confer specific jurisdiction on this Court. *See: Vetrotex Certainteed Corp. v. Consolidated Fiber Glass*, 75 F.3d 147, 151, 152 (3rd Cir.1996) (single agreement, standing alone, is an insufficient ground upon which to exercise specific personal jurisdiction, nor do informational communications in furtherance of a contract between a resident and a non resident establish the purposeful activity necessary for a valid assertion of personal jurisdiction over non-resident defendant). Accordingly, the Defendants' motion to dismiss for lack of *in personam* jurisdiction is granted with respect to Angel Manfredy, John Manfredy, and Jeffrey Brown.

■ As regards the law firm defendant, given its admission that it has records of having serviced 54 clients in Pennsylvania, some of which are present clients, we conclude that sufficient evidence exists that it has purposefully availed itself of the privilege of conducting activities within this state to justify the exercise of general personal jurisdiction over it. However, portions of Plaintiff's complaint shall be dismissed as against this defendant as well pursuant to Fed.R.Civ.P. 12(b)(6).[2]

■ Specifically, plaintiff's claims against D'Ancona & Pflaum are set forth in Counts II, III, IV and VI of the complaint under the state law theories of unfair competition/disparagement, tortious interference with contract/inducement to breach contract and defamation. Since, however, we could not find any instance in Pennsylvania law where a cause of action for "Inducement to Breach Contract" was recognized separate and apart from a claim for tortious interference with existing and prospective contractual relations and since the claims in Count IV are based upon the same set of facts as Count III, Count IV is dismissed with prejudice as against D'Ancona & Pflaum as being duplicative of Count III.

■ Likewise, as plaintiff's Count II "Unfair Competition—Disparagement" claim is premised solely upon the allegedly "untrue comments" made by defendants "to Plaintiff's associates, including but not limited to boxing promoters and television network executives for the sole purpose of causing injury to Plaintiff's business reputation and goodwill," we find that it is

---

**2.** It has long been held that the issue of the sufficiency of a pleading may be raised by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). In resolving a Rule 12(b)(6) motion, the courts are to primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir. 1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141 (E.D.Pa.1991). The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988); *Angelastro v. Prudential– Bache Securities, Inc.*, 764 F.2d 939, 944 (3rd Cir.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

similarly duplicative of plaintiff's Count VI defamation claim.[3] Consequently, Count II of the complaint is dismissed with prejudice against the law firm defendant.

■ To plead a cause of action for defamation in Pennsylvania, a plaintiff must plead and prove each of the following elements:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

*Furillo v. Dana Corporation Parish Division,* 866 F.Supp. 842, 847 (E.D.Pa.1994), citing 42 Pa.C.S. § 8343, *Elia v. Erie Insurance Exchange,* 430 Pa.Super. 384, 634 A.2d 657, 659 (1993). Under Pennsylvania defamation law, it is within the trial court's province to make an initial determination whether or not the challenged statements are capable of having a defamatory meaning. *Id.*

■ In Pennsylvania, a defamatory statement is one that "tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 922 (3rd Cir.1990) quoting *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 303, 167 A.2d 472 (1960). In determining whether or not a particular communication

is defamatory, the court must view the statement in context with an eye toward the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. *Baker v. Lafayette College,* 516 Pa. 291, 296, 532 A.2d 399, 402 (1987); *Corabi v. Curtis Publishing Company,* 441 Pa. 432, 447, 273 A.2d 899, 907 (1971). Opinion, without more, does not create a cause of action in libel; instead, the allegedly libeled party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. *Baker,* 516 Pa. at 296–297, 532 A.2d at 402.

■ In this case, Plaintiff is basing his defamation claim against the law firm defendant on Attorney Brown's purported oral and written statements to such third persons as Cédric Kushner and Lou De-Bella of HBO that plaintiff was an ineffective negotiator and failed to secure endorsements for Angel Manfredy and on the March 2, 1998 termination letter from Angel Manfredy to Lloyd Remick which allegedly gives the false impression that plaintiff was unsuccessful in obtaining endorsements. Viewing these alleged statements in the context under which they were allegedly made, we find that plaintiff has adequately pled a cause of action for defamation against the law firm based upon the alleged actions of its employee, Brown. Thus, Count VI of the complaint shall stand against the law firm defendant only.

We reach a similar conclusion with respect to the plaintiff's Count III claim for

---

**3.** Indeed, unfair competition is a common law cause of action which has been generally defined as the passing off by a defendant of his goods or services as those of another by virtue of substantial similarity between the two leading to confusion on the part of potential customers or the misrepresentation by a defendant of the qualities, origin or contents of his

products or services. *See, e.g.: Guardian Life Ins. Co. of America v. American Guardian Life Assurance Co.,* 943 F.Supp. 509, 517 (E.D.Pa. 1996); *Mercury Foam Corp. v. L & N Sales & Marketing,* 625 F.Supp. 87 (E.D.Pa.1985); *Schmid Laboratories v. Youngs Drug Products, Corp.,* 482 F.Supp. 14, 21 (D.N.J.1979).

interference with business and contractual relationships.

Pennsylvania has adopted the Restatement (Second) of Torts § 766 (1979) version of tortious interference with contract while recognizing two distinct branches of the tort: one concerning existing contractual rights and another regarding prospective contractual relations. Under the Restatement, "one who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." *U.S. Healthcare v. Blue Cross,* 898 F.2d at 924–925; *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 431, 393 A.2d 1175 (1978), *cert. denied,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979).

With respect to prospective contractual relations, the following elements must be demonstrated: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. *Id.*

Here, the plaintiff seeks to hold the law firm vicariously liable for the alleged actions of its associate attorney, Jeffrey Brown who purportedly "on his own behalf and on behalf of Defendant D'Ancona & Pflaum, induced Angel Manfredy to break his professional agreement with Remick and Resnick, specifically instructing and later drafting the March 2, 1998 letter to Lloyd Z. Remick and thereafter maneuvering himself in place of Remick and Resnick and then facilitating the installation of Angel's brother, John Manfredy, as Angel Manfredy's manager." (Pl's Complaint, ¶ s 45, 50). These allegations

are, we find, sufficient to state a cause of action upon which relief may be granted if proven, for tortious interference with an existing contractual relation, i.e., Resnick's representation of Angel Manfredy. Accordingly, Count III also survives the defendant's motion to dismiss.